UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL E. WILLIAMS,

        Plaintiff,              Case No. 2:16-CV-14065
                                District Judge Arthur J. Tarnow
v.                               Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR REMAND PURSUANT TO SENTENCE FOUR (DE 13) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand pursuant

to sentence four (DE 13), **GRANT** Defendant's motion for summary judgment

(DE 16), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Michael E. Williams, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security supplemental security

income (SSI) benefits. This matter is before the United States Magistrate Judge for

a Report and Recommendation on Plaintiff's motion to remand pursuant to

sentence four (DE 13), the Commissioner's cross motion for summary judgment

(DE 16), Plaintiff's reply (DE 17), and the administrative record (DE 10).

## A.    Background

Plaintiff filed his application for SSI benefits on July 31, 2013, alleging that

he has been disabled since January 1, 2001.  (R. at 205-11.)  Plaintiff's application

was denied, and he sought a *de novo* hearing before an Administrative Law Judge

("ALJ").  (R. at 135-44.)  ALJ Michael R. Dunn held a hearing on April 2, 2015, at

which Plaintiff was represented by counsel.  (R. at 50-101.)  On May 29, 2015,

ALJ Dunn determined that Plaintiff was not disabled within the meaning of the

Social Security Act.  (R. at 27-49.)  The ALJ recognized that Plaintiff had

previously filed an application for SSI benefits on January 4, 2011, which was

denied, following a hearing, by a decision from ALJ Andrew Sloss on February 6,

2012.  (R. at 30, 102-119.)  ALJ Sloss found that Plaintiff could perform a full

range of medium work, with some additional nonexertional limitations, and that

Plaintiff had not been under a disability from September 3, 1999 through the date

of the decision.  (R. at 102-19.) The Appeals Council denied Plaintiff's appeal of

that decision, and Plaintiff did not further appeal the unfavorable decision.  (R. at

30, 120-22.)  Accordingly, ALJ Sloss's decision became the final decision and

binding on all parties.  (R. at 30.)  ALJ Dunn found that the present record contains

a significant amount of new and additional evidence, providing a sufficient basis to

depart from the findings and decision rendered by ALJ Sloss.  (R. at 30-31.)
Accordingly, ALJ Dunn considered all of the evidence in the record, without any
deference or acquiescence to the prior decision, and determined that Plaintiff was
still not disabled within the meaning of the Social Security Act. (R. at 30-43.) On
September 28, 2016, the Appeals Council denied Plaintiff's request for review.  (R.
at 1-6.) Thus, ALJ Dunn's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on November 16, 2016.
(DE 1.)

### B.    Plaintiff's Medical History and Hearing Testimony

Plaintiff's combined medical records span the period from August 9, 2011
through March 16, 2016, and generally include complaints of back, neck and wrist
pain, breathing problems and chest pains. (R. at 293-1268.) The 975 pages of
medical records are mostly comprised of hospital and treatment records from a
number of health care providers as well as diagnostic tests, and also include
medical source statements from Plaintiff's treating physicians, Dr. Nikolas
Dimovski and Dr. Nael Tarakji, consulting examiner Dr. Michael Geoghegan, and
State agency medical consultant Dr. Quan Nguyen.  These records will be
discussed as necessary below.

Plaintiff testified at the April 2, 2015 hearing before ALJ Dunn (*see* R. at 57-87), and vocational expert Mary Everts also provided testimony. (R. at 88-100.) The hearing testimony will be cited as necessary below.

### C.    The Administrative Decision

On May 29, 2015, ALJ Dunn issued an "unfavorable" decision.  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2013, the application date.  (R. at 33.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  mild degenerative disc disease with scoliosis and mild L5 nerve root irritation; bilateral carpal tunnel syndrome (CTS); obesity; and, chronic obstructive pulmonary

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

disease (COPD).  (R. at 33-35.) At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 35-36.) Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> perform light work … except he can only frequently handle, finger, and feel bilaterally.  The claimant can frequently balance, but can only occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. The claimant can never climb ladders and scaffolds.  He can never be exposed to unprotected heights and must avoid hazardous machinery. The claimant must avoid concentrated exposure to extreme cold and heat, vibration, and pulmonary irritants.  He can never operate a motor vehicle or use handheld power tools.

(R. at 36-40.) At **Step 4**, the ALJ concluded that Plaintiff is not disabled because he is capable of performing past relevant work as a security guard as it is actually performed.  (R. at 41.) The ALJ then continued and made alternative findings for **Step 5** that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 42-43.)  ALJ Dunn therefore concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, since July 31, 2013.  (R. at 43.)

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of

6

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597

7

F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the

substantial evidence standard, "'a decision of the Commissioner will not be upheld

where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*,

582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir. 2007)).

### E. Analysis

Plaintiff claims that the ALJ erred in his: **(1)** evaluation of the medical

opinion evidence of **(a)** his treating neurologist, **(b)** his treating family physician,

and **(c)** an "unidentified source;" and, **(2)** determination of Plaintiff's RFC because

"the use of a cane for balance is not taken into consideration."  (DE 13 at 10-19.)

The Commissioner opposes Plaintiff's motion, asserting that substantial evidence

supports the Commissioner's decision.  (DE 16 at 3-25.)  I will address each

argument in turn.

### 1. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ erred by failing to provide "good reasons" for

giving little weight to the medical opinions of his treating neurologist, Dr. Nael M.

Tarakji, and his treating family physician, Dr. Nikolas Dimovski. (DE 13 at 6-12.)

The Commissioner responds that Plaintiff has not demonstrated that the ALJ

committed any error when weighing the opinion evidence. (DE 16 at 4-18.)

8

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[3] *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give

a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

---

[3] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

 *Id.*

treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner

has met the goal of § 1527(c). *See Francis*, 414 F. App'x at 805. I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to each] treating physician's opinion[.]'" *See id.* (quoting *Friend*, 375 F. App'x at 550).

### a.   Dr. Tarakji's November 2011 Medical Source Statement

As explained above, Plaintiff had filed a prior application for disability insurance (DI) benefits and SSI in January 2011, which was denied.  (R. at 30, 102-22.)  In connection with that prior application, Plaintiff submitted a Michigan Department of Human Services "Medical Needs" form dated November 2011, and signed by Dr. Tarakji.  (R. at 112, 293-94.)  That "check-the-box" form included a diagnosis of "(1) CTS W (2) deg lumbar spine," indicated that Plaintiff was ambulatory and did not have a medical need for assistance with any personal care activities, but summarily concluded that he could not "work at any job."  (R. at 293-94.)  The prior ALJ expressly addressed this opinion but afforded it "little weight" because Dr. Tarakji had only seen Plaintiff three times prior to the opinion, he found it unsupported by objective signs and findings, and the doctor specifically noted just three months prior, in September 2011, that Plaintiff's lumbar condition cause no major problems that would prevent him from working. (R. at 112, 507.)

Plaintiff acknowledges that this form "is clearly outside the disability period" because it was completed prior to the denial of his prior claim, but complains, incorrectly, that there is "no discussion" of this form, even though "it is consistent with the Medical Needs Form completed by Dr. Dimovski nearly two years later, in August 2013." (DR 13 at 11.) First, the medical evidence from the initial proceeding cannot be subsequently reevaluated. *See Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332, at *5 (6th Cir. 2000) ("Collateral estoppel (issue preclusion) … bars parties from attempting to relitigate issues that they have already litigated and lost.") (citations omitted). In any event, even though this evidence is, as Plaintiff admits, "outside the disability period," the ALJ clearly did "acknowledge" this evidence and referred to it several times in his review of "claimant's historical records." (R. at 37-38 (referring to Exhibit B1F).) ALJ Dunn explained at the beginning of his decision that he does not find a basis for reopening the prior decision and that "any discussion of the evidence prior to the decision in the prior application [such as Dr. Tarakji's November 2011 Medical Needs form] is for historical and contextual purposes only and does not constitute a reopening." (R. at 30.)

Moreover, any omission of a more detailed discussion of this November 2011 Medical Needs form is harmless and would not have changed the ALJ's finding. ALJ Dunn considered the opinions from Plaintiff's treating sources

13

during the relevant time period, as well as the opinions of the independent medical

consultant and the State agency consulting doctor, in addition to Plaintiff's

treatment records, hospital records, and objective medical testing, and Plaintiff

does not argue that this November 2011 opinion contains any different or

additional information that the ALJ should have considered.  In fact, he contends

that this Medical Needs form is "consistent" with Dr. Dimovski's Medical Needs

form completed in August 2013, which was expressly considered and given little

weight by the ALJ.  (DE 13 at 11; R. at 38-39.)  As the Commissioner properly

asserts, however, nothing requires the ALJ to credit a doctor's unsupported opinion

simply because another doctor reached a similar, unsupported conclusion.  *See*

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441-42 (6th Cir. 2010) (noting

that ALJs are not "instruct[ed] … to compare the consistency of … physicians'

opinions to each other"); *Hammer v. Comm'r of Soc. Sec.*, No. 13-10176, 2014 WL

1328190, at *2 n.1 (E.D. Mich. Mar. 31, 2014) ("an ALJ's determination of the

weight to give to the medical opinions in the record does not consist merely of

counting heads and incorporating into the claimant's RFC the limitations that

appear in the majority of these opinions.  Rather, each such opinion must be

evaluated on its own[.]").

Further, the doctor's "diagnoses" listed in the November 2011 Medical

Needs form say nothing about the severity of any of Plaintiff's resulting functional

14

limitations.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere

diagnosis of [an impairment], of course, says nothing about the severity of the

condition."); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th

Cir. 2007) ("the mere existence of those impairments, however, does not establish

that Despins was significantly limited from performing basic work activities").

And, the doctor's conclusion that Plaintiff was unable to work at any job is not a

medical opinion entitled to any deference, but is an issue that is reserved to the

Commissioner. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th

Cir. 2010) ("When a treating physician … submits an opinion on an issue reserved

to the Commissioner—such as whether the claimant is 'disabled' or 'unable to

work'—the opinion is not entitled to any particular weight."); *Mims v. Colvin*, No.

16-10037, 2017 WL 993101, at *5 (E.D Mich. Feb. 3, 2017) ("the determination of

whether a claimant is 'disabled' is a determination reserved for the Commissioner,

and [the doctor's] opinion that [the claimant] is disabled is not a medical opinion to

which the treating physician rule applies."), *report and recommendation adopted*,

2017 WL 1055542 (E.D. Mich. Mar. 21, 2017).  Accordingly, this claim of error

fails.

### b.  Dr. Dimovski's September 4, 2012 Medical Source Statement

Plaintiff's treating family physician, Dr. Dimovski, completed a Medical

Examination Report form on September 12, 2012, in which he: (1) listed Plaintiff's

history of impairments and diagnoses as: COPD, depression, dyslipidemia, GERD, peptic ulcer, herniated disc, low back pain, nicotine abuse and carpel tunnel syndrome; (2) indicated that Plaintiff could meet his needs in the home; (3) indicated Plaintiff's condition was "deteriorating;" and, (4) referred to the progress notes from his last visit, which was on August 24, 2012, for support, without any elaboration or explanation. (R. at 475-76.) However, at that August 24th examination, which Plaintiff concedes was "rather benign," Plaintiff's chief complaint was a sleep disorder, and Dr. Dimovski noted that Plaintiff was currently "asymptomatic," with no excessive daytime sleepiness, and that on examination his gait was normal and he was '[w]ell developed, well nourished, healthy appearing, not uncomfortable, [not] tired and well hydrated." (R. at 336-38.)

The ALJ properly considered this September 12, 2012 statement, although he noted that it was "issued long before the application date" and therefore had "little bearing on the severity" of Plaintiff's condition. (R. at 38-39.) *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (recognizing that the proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after the application date). ALJ Dunn also properly noted that this opinion is of "little use" because it contains no findings regarding Plaintiff's functional limitations. (R. at 38-39.) Indeed, other than the unsupported notation

16

that Plaintiff's condition is "deteriorating," there is nothing in the report, or in the

August 24th treatment note, regarding Plaintiff's limitations or his ability to work.

And, as explained above, the mere "diagnoses" listed say nothing about Plaintiff's

functional limitations or his ability to work. *See Higgs*, 880 F.2d at 863; *see also*

*Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is

determined by the functional limitations imposed by a condition, not the mere

diagnosis of it.") (internal citation omitted).  The doctor's note that Plaintiff could

meet his needs at home (R. at 476) further supports a finding that Plaintiff is not

disabled.  *See Buchanon v. Comm'r of Soc. Sec.*, No. 13-CV-14288, 2015 WL

927831, at *8 (E.D. Mich. Mar. 4, 2015) (ALJ properly considered doctor's

statement that the plaintiff could "meet her needs in her home" in assigning little

weight to the doctor's opinion regarding plaintiff's physical limitations).  Plaintiff

has not met his burden of showing the ALJ's reasoning is unsupported by

substantial evidence.

### c. Dr. Dimovski's August 8, 2013 Medical Needs Form

Dr. Dimovski completed a Medical Needs form on August 8, 2013, in which

he: (1) noted Plaintiff's diagnoses as: "chronic back pain, COPD, emphysema,

dyspnea with exertion, atypical chest pain, neuropathy, carpel tunnel syndrome;"

(2) indicated Plaintiff was ambulatory; (3) indicated Plaintiff did not have a

medical need for assistance with any personal care activities listed; and, (4) stated

that Plaintiff was unable to work for an "indefinite" period of time.  (R. at 473-74.)

ALJ Dunn evaluated this opinion, observed that it "summarily opined that the

claimant was indefinitely unable to work at his job or any other job" and gave it

"little weight … because it contains summary conclusions on matters that are

reserved as a matter of law to the Commissioner" and "contains no analysis of the

claimant's functional capacity, so it is not useful in making this determination."

(R. at 39.)  It is well-settled that the ultimate issue of disability is reserved to the

Commissioner and not the treating or examining physician.  *Kidd v. Comm'r of*

*Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008).  Thus, when a medical or non-

medical source offers an opinion on "an issue reserved to the Commissioner, such

as whether the claimant is disabled, the ALJ need not accord that opinion

controlling weight."  *Id.*; *see also Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638,

640 (6th Cir. 2016) ("the ALJ properly discounted [the doctor's] statements

regarding Turk's inability to work as encroaching on issues expressly reserved to

the SSA.") (citations omitted); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir.

2007) ("[N]o 'special significance' will be given to opinions of disability, even if

they come from a treating physician.").

Plaintiff complains that the ALJ was "required to evaluate the evidence from

the record 'taken as a whole,' taking into consideration that evidence which fairly

detracts from its weight."  (DE 13 at 13.)  However, Plaintiff wholly fails to cite to

18

any record evidence that he contends the ALJ failed to consider, and seemingly

ignores that the ALJ did thoroughly evaluate the record evidence, including

treatment records from Plaintiff's treating physicians, hospital records, diagnostic

testing, including x-rays, MRIs, EMGs, and CT scans, as well as physical therapy

records, and thus, undoubtedly, did consider the "record as a whole" in reaching

his opinion.  (See R. at 37-38.)  Further, this "check-the-box" form is

unaccompanied by any meaningful explanation, and thus is entitled to little or no

weight for that reason as well.  *See Hernandez v. Comm'r of Soc. Sec.*, 644 F.

App'x 468, 474 (6th Cir. 2016) (a check-the-box form, unaccompanied by

explanation, is entitled to little or no weight because "it is nearly impossible to

analyze," is "weak evidence at best," and meets the "patently deficient standard")

(citations and internal quotation marks omitted)

Accordingly, the ALJ's finding that that Dr. Dimovski's August 2013

opinion was entitled to limited weight is supported by substantial evidence. *See*

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by

conclusory statements of doctors, particularly where they are unsupported by

detailed objective criteria and documentation") (internal quotation omitted).

### d.   June 18, 2014 Medical Needs Statement from an "Unidentifiable Source" and Dr. Tarakji's June 18, 2014 Opinion

Plaintiff submitted a "State of Michigan Department of Human Services" form titled "Medical Needs – Work Participation Program" dated June 18, 2014, but the ALJ noted that the signature on the form is "illegible."  (R. at 39, 567-68.) The form seems to list three diagnoses, which Plaintiff asserts are: CTS, lumbar stenosis, and "hip."  (DE 13 at 13, citing R. at 567.)  ALJ Dunn recognized that "[t]his source concluded that the claimant was completely unable to work at any job, that he could never lift more than ten pounds and only occasionally lift less than ten pounds, that he could not stand or walk for two hours per workday, and that he would need assistance doing laundry and housework."  (R. at 39.) However, this "check-the-box" form offers no explanation or justification for any of the functional limitations noted.

Plaintiff incorrectly asserts that the ALJ "rejects" this form and contends that he should have "contact[ed] the representative who submitted this form" to determine the identity of the source.  (DE 13 at 13-14.)  The ALJ plainly considered this opinion, despite not knowing whether the author was an acceptable medical source, but expressly gave it "little weight," noting that <u>even if the opinion came from Plaintiff's treating physician</u> "the limitations alleged in this opinion are wholly unsupported by the record.  They are inconsistent with the claimant's presentation during treatment and during the physical examination with the independent medical consultant."  (R. at 39.)  Thus, the signature issue is irrelevant

20

and the ALJ was under no obligation to investigate and identify the author.  *See* 20

C.F.R. § 404.1520(b) (providing that the decision to recontact medical sources

about inadequate evidence is within the discretion of the ALJ); *see also Mims v.*

*Colvin*, No. 16-10037, 2017 WL 993101, at *5 (E.D. Mich. Feb. 3, 2017) (the ALJ

did not abuse her discretion in finding that the record was sufficient for her to

assess plaintiff's RFC), *report and recommendation adopted*, 2017 WL 1055542

(E.D. Mich. Mar. 21, 2017).

Further, contrary to Plaintiff's unsupported assertion, the ALJ's explanation

that the Medical Needs form is inconsistent with Plaintiff's presentation during

treatment and during the independent medical consultant's examination is

supported.  The ALJ thoroughly analyzed and discussed Plaintiff's treatment

records and objective testing, and the independent medical consultant's

examination, earlier in this section of his opinion. (R. at 37-38.) The ALJ reviewed

Plaintiff's extensive objective medical testing (e.g., EMGs, CT scans and MRIs)

and appropriately found that these tests showed that Plaintiff's spinal impairments

were not as severe as initially indicated, and that he experienced only mild

degenerative spinal processes with mild radicular symptoms from nerve root

irritation.  (R. at 37, 40, 480, 483, 572-73, 1150-51.)  He also analyzed the

independent medical consultant's examination findings and recorded observations

and gave those findings "great weight," because they were "generally consistent

with Plaintiff's longitudinal presentation throughout the medical record." (R. at

39.) ALJ Dunn explained that the independent medical consultant saw no signs of

musculoskeletal spinal problems, although he did observe that Plaintiff

experienced a decreased range of motion of his lumbar spine, noted that straight

leg raising was negative bilaterally, and that "all other range of motion is intact and

full throughout." (R. at 38, 40, 496-500.) He also noted that Plaintiff used a cane

to ambulate, but that he did not need to use it to ambulate and that he maintained a

normal gait. (*Id.*) Accordingly, the Court is able to "trace the path of his

reasoning," and his findings are supported by substantial evidence. *Lowery v.*

*Comm'r*, 55 F. App'x. 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d

300, 306 (7th Cir. 1995)). Plaintiff contends that the "unidentified source" of the

Medical Needs statement is plainly Dr. Tarakji, who the ALJ notes opined that

same day that Plaintiff's impairments made him "permanently and totally

disabled." (R. at 39, 1152.) The Commissioner agrees that the author is likely Dr.

Tarakji, but correctly notes that even so, the ALJ assumed the opinion was from a

treating source, so there is no harm. (R. at 39.)[4]

　　　With regard to Dr. Tarakji's June 18, 2014 opinion, the ALJ recognized that

Dr. Tarakji was "[t]he claimant's neurologist[,]" but gave this opinion "no weight

---

[4] The ALJ, giving Plaintiff the benefit of the doubt, entertained the possibility that
the opinion was "attributable to the claimant's physician, Dr. Dimovski[.]" (R. at
39.) Notwithstanding the identity of the doctor, it was considered, *arguendo,* as if it
were the opinion of a treating source.

22

because it is a summary conclusion on a question of law that is reserved solely to the Commissioner." (R. at 39.) *See Smith v. Comm'r of Soc. Sec.*, No. 13-CV-13186, 2014 WL 3579198, at *6 (E.D. Mich. July 21, 2014) (ALJ complied with requirements of 20 C.F.R. § 404.1527(c) by "at least impliedly, not[ing] that Dr. Bouvier's specialty was in primary care"). That treatment note lists Plaintiff's subjective complaints of numbness and tingling in his hands, headaches, and back pain radiating to the right hip and lower extremities, notes that an EMG showed bilateral carpal tunnel syndrome and that a trigger point injection was done, noted Plaintiff's back pain was "probably related to degenerative lumbar spine disease with evidence of lumbar stenosis," but that neither surgery nor epidural injections were advised, and advised plaintiff to instead use a hand brace with vitamin B6 and to continue his medications. (R. at 1152.) Plaintiff does not point to any specific medical evidence in Dr. Tarakji's treatment records, or any other medical records, which would support his opinion regarding the severity of Plaintiff's symptoms or which supports the severe restrictions opined in the June 18, 2014 Medical Needs form. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."). Dr. Tarakji's note ends with "I will see him for evaluation in 3 months." (R. at 1152.) Tellingly, and only *six weeks later*, Dr. Tarakji noted that an MRI study showed "no herniated

23

disc, but degenerative lumbar spine disease with neural foraminal narrowing at the level of L4-L5 and to a lesser extent L5-S1.  EMG showed L5 root irritation without evidence of sustained denervation" and that he would "continue with conservative treatment[.]"  (R. at 1150.)  This subsequent note does not support Dr. Tarakji's opinion that Plaintiff is "permanently and totally disabled."

Thus, Plaintiff has failed to meet his burden to show that the ALJ improperly weighed these opinions.  *See Buxton*, 246 F.3d at 773; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion); *see also Buchanon v. Comm'r of Soc. Sec.*, No. 13-CV-14288, 2015 WL 927831, at *8 (E.D. Mich. Mar. 4, 2015) (ALJ properly assigned little weight to treating physician's ultimate conclusion as to the severity of plaintiff's limitations because "it was not supported by his own examination findings or by the record as a whole").

### 2.    RFC Determination

Plaintiff argued that the ALJ's RFC for a reduced range of light work is not supported by substantial evidence because "the use of a cane for balance is not taken into consideration."  (DE 13 at 16-19.)  He contends that there are numerous references to his use of a cane for balance, including his testimony, Adult Function Report, and treatment records.  (DE 13 at 17, citing R. at 64, 75-76, 239, 325, 592-

24

93, 604.)  Plaintiff asserts that even Dr. Geoghegan, the consultative examining

physician, noted that Plaintiff used a cane for ambulation, but concluded that he

"does not require an assistive device to help him ambulate."  (DE 13 at 17, quote

from R. at 499.)  Plaintiff argues that he needed the cane for balance and the RFC

is silent on whether or not a cane would be necessary.  (DE 13 at 17-18.)  The

Commissioner responds that substantial evidence supports the ALJ's RFC

determination for a reduced range of light work.  (DE 16 at 22-25.)

It must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4,

including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th

Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of

Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,*

613 F.2d 139, 145 (6th Cir.1980); *Cole v. Sec'y of Health and Human Servs.,* 820

F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d

417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving

her lack of residual functional capacity").  The Commissioner has the burden of

proof only on "the fifth step, proving that there is work available in the economy

that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92

(6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step

five is essentially to partially shift the burden of proof required of a claimant at

step four to the Commissioner.").  However, "[t]he Social Security Act instructs

that the ALJ—not a physician—ultimately determines a claimant's RFC."

*Coldiron*, 391 F. App'x at 439 (citing 42 U.S.C. § 423(d)(5)(B)).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental

limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F.

App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The determination of Plaintiff's RFC is an issue reserved to the Commissioner and

must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).

"'ALJs must not succumb to the temptation to play doctor and make their own

independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x

181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to Social Security Rule 96-

8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."
*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the
ALJ "'need only articulate how the evidence in the record supports the RFC
determination, discuss the claimant's ability to perform sustained work-related
activities, and explain the resolution of any inconsistencies in the record.'" *Id.*
(citations omitted).

The ALJ here thoroughly reviewed and considered Plaintiff's function
report, his hearing testimony, his daily activities, the objective medical evidence,
his treatment history, and the opinion evidence, and found that Plaintiff was
capable of performing a reduced range of light exertional work. (R. at 37-40.) He
found that Plaintiff's physical condition "somewhat worsened" since the prior
decision, noting that EMGs revealed evidence of carpal tunnel syndrome and that
Plaintiff received invasive treatment (surgical release) for this impairment. (R. at
40.) However, to the extent Plaintiff alleges he is more limited than found in the
RFC, the ALJ found he is not credible. (*Id.*) ALJ Dunn noted, among other things,
that Plaintiff's doctor observed that the severity of Plaintiff's right arm pain
following the surgical release was "anatomically inexplicable." (R. at 28, 40, 601.)
In addition, Plaintiff's physical therapist noted that Plaintiff's "clinical presentation
during therapy was wholly inconsistent with the alleged severity of his pain, as he
was able to complete all exercises without difficulty." (R. 37, 40, 590.) Further,

27

the objective medical testing showed that Plaintiff's "spinal impairments were not as severe as initially indicated, as the claimant did not have a herniated disc and experienced only mild degenerative spinal processes with mild radicular symptoms from nerve root irritation."  (R. at 37, 40, 1150-51.)  Moreover, the independent medical consultant "saw no signs of musculoskeletal spinal problems as of the application date," and Plaintiff's "statements showed he retained a significant ability to perform his activities of daily living without assistance, notwithstanding his impairments."  (R. at 40, 496-500.)

Although Plaintiff cites to instances in the record noting cane use, including his own testimony (which the ALJ found not entirely credible)[5] (DE 13 at 17-19), he is unable to point to any objective medical evidence demonstrating the need for a cane while standing or walking.  *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.").  On the other hand, there is ample evidence supporting the ALJ's RFC.  In May and August 2012, Plaintiff's gait was normal and he was assessed with normal muscle strength and tone. (R. at 338, 1222.)  In January and March 2014, Plaintiff only complained of numbness and

---

[5] Plaintiff has not identified the ALJ's credibility finding as an issue on appeal.

tingling in his hands. (R. at 1154, 1157.)  In November 2014, Plaintiff denied chronic back and neck pain and chronic sore muscles. (R. at 1235.)  And, in February 2015, Plaintiff complained of back and shoulder pain, but he presented with a normal gait.  (R. at 1256-59, 1265.)  In addition, Dr. Geoghegan observed that Plaintiff had a "normal gait and did not require an assistive device to help him ambulate."  (R. at 499.)  A medical requirement for use of a cane for balance or walking was not mentioned in any of these records.  Further, Plaintiff reported to his physical therapist in April 2012 that he did not routinely use a cane (R. at 597), and he testified at the hearing that his treating physician who "did the surgery on [his] wrist" (seemingly Dr. Tarakji) told Plaintiff he did not want Plaintiff to use a cane.  (R. at 75.)

Thus, while there may be evidence supporting Plaintiff's use of a cane while standing, there is also evidence supporting the ALJ's RFC determination, and I find no error in the ALJ's RFC determination.  I note that an ALJ's decision cannot be reverse merely because there exists some other evidence in the record that might support a different conclusion.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion…. This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation

omitted); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").  The instant decision is supported by substantial evidence, and accordingly, should stand.

### F.    Conclusion

In sum, the ALJ's opinion is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand pursuant to sentence four (DE 13), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

30

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 26, 2018              s/Anthony P. Patti
                                      ANTHONY P. PATTI
                                      UNITED STATES MAGISTRATE JUDGE


**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record
on February 26, 2018, electronically and/or by U.S. Mail.

                                      s/Michael L. Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti